## In re McLELLAN STORES CO.
### Nos. 3342, 3343.

District Court, N. D. Texas, Dallas Division. Feb. 1, 1933.

John T. Gano, of Dallas, Tex., for the motion.

W. E. Lessing, of Abilene, Tex., Walker & Baker, of Cleburne, Tex., and W. M. Short and M. Hendricks Brown, both of Fort Worth, Tex., for interveners.

ATWELL, District Judge.

In the Southern district of New York, on January the 16th, a voluntary petition in bankruptcy was filed by the McLellan Stores Company. On the 18th day of the same month creditors of the bankrupt, in states other than New York, or Texas, filed applications for an ancillary receiver in this district. Upon hearing those applications it was shown that there were a dozen stores in this district which were open and actively engaged in the disposition of merchandise. The applications were consolidated, and a receiver appointed. On the 26th of January, the Irving Trust Company was duly chosen and qualified as trustee in the parent court. About that time, and a few days afterwards, several interventions were filed in this court by landlords who owned the stores in which the bankrupt operated in Fort Worth, Cleburne, Abilene, and San Angelo. These interveners allege outstanding rental contracts, having many years yet to run, and also show large amounts of arrearage rents. They claim the right to foreclose in this court on the respective stocks of merchandise.

The trustee moves to dismiss their interventions.

This court's jurisdiction springs from subdivision 20 of section 2 of the Bankruptcy Act, which was added in 1910 (11 USCA § 11 (20). There must be read with this, subdivision 3 of the same section (11 USCA § 11 (3), which provides for the appointment of receivers to take charge of the property of the bankrupt until a trustee is qualified.

Prior to the addition of the amendment a majority of the courts were holding that the ancillary jurisdiction already existed. Be that as it may, the amendment must be considered as related to the power which was conferred in the act upon the primary court.

It was because of the pendency of the bankruptcy in the New York court that this court acted. There was no appeal to the general equity powers of the court, as such, upon the application of interested creditors who had a right to enter by reason of diversity of citizenship and amount of claims. The creditors came proclaiming the probability of a loss of assets belonging to the estate in a matter that was being administered elsewhere. The aid of this court was not sought by the receiver or the trustee of the original court of entry, but it was sought because of the proceedings there, and the insufficiency of the protection to the property outside of the district of those proceedings.

Learned counsel for the interveners contend that since this court had the power to take the property, that it also has the power to determine title and liens relating thereto. They cite Fidelity Trust Co. v. Gaskell, 195 F. 865, 866, 8th Circuit; Butler v. Ellis (C. C. A.) 45 F.(2d) 951; In re Music Master Corp. (D. C.) 15 F.(2d) 860; In re Mill Iron Co. (D. C.) 56 F.(2d) 248; In re Dayton Coal & Iron Co. (D. C.) 291 F. 390, 401; In Matter of Einstein (D. C.) 245 F. 189.

■ It must be conceded, otherwise great injustice might result, that ancillary jurisdiction includes the power to hear and adjudge adverse claims of parties to the specific property seized, and to send the property or its proceeds to the court of primary jurisdiction, or to apply such proceeds to the satisfaction of such diverse claimants. And it must also be conceded that the title to all of the property of the bankrupt passes to the trustee as of the date of the adjudication, no matter where the property is situated, Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305, Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208; that the title to all property belonging to the bankrupt, wherever situated, having so vested the jurisdiction to determine the validity and amount of liens thereon, and to decree the method of their liquidation, vests in that court. Isaacs v. Hobbs Tie & T. Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645, Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060.

■ Care in expression drives one to the statement that the liens asserted here might, in all probability, be determined in this jurisdiction just as well as in the Southern district of New York. The interveners' rights under the Texas statute (Vernon's Ann. Civ. St. art. 5222) are beyond contradiction, and will be upheld by either court; but it seems to me that it contributes to the orderly administration of the bankrupt's affairs to have them asserted in the primary jurisdiction. Learned brethren speak and write feelingly about a remote court taking into possession that which belongs to the local citizen, and thereby requiring such local citizen to go a distance in order to conserve his rights. But, like most cases, this case presents its own complexion. The local landlords dealt with a foreign corporation which came into Texas and opened a number of stores after making with the local citizens long-time leases, at, doubtless, attractive rentals. If and when bankruptcy should come it was reasonable to presume that the proceedings would be instituted where the foreign corporation had its legal domicile. There is no question in this case about the property being that of the bankrupt.

It is suggested by the interveners that the proceedings were filed for the purpose of relieving the bankrupt of onerous rental contracts.

■ But after all we are dealing with a situation where an estate is being administered under the terms of the statutory law in another district. Such administration has many of the elements of unit necessity in it. The actual carrying on of the business for a time. The settlement of all differences so that the bankrupt, who is shown to be solvent, may again resume its activities. This practical turn requires the guidance and control of that jurisdiction rather than this jurisdiction. This court could hardly, with propriety, go forward in the conduct of the business of a dozen stores without the assistance and directing force that must be on tap in the primary jurisdiction where there are 250 such stores. This court does not have control of the property in this district, save and except under the authority of the bankruptcy statute. It is, therefore, a receivership other than an equity receivership in the pure sense, and, such a receivership terminates upon the appointment of the trustee. This view is somewhat supported by Boonville National Bank of Boonville, Ind., v. Blakey (C. C. A.) 107 F. 891, 894, in a well-

reasoned opinion by the Court of Appeals of the Seventh Circuit, in which it was said: "The appointment of a receiver in bankruptcy proceedings comes from the act and is limited by the act. The order of the court appointing him cannot be broader than the statute. The receiver is a statutory receiver and not a general receiver. The latter is appointed by a court of chancery by virtue of its inherent power independent of any statute. His authority is derived from, and his duty prescribed by, the order of appointment, and he is called a common-law receiver."

The Circuit Court of Appeals for the Ninth Circuit, in Stanton v. Busch, 59 F.(2d) 668, seems to agree with this view, and goes far enough to hold that in the ancillary jurisdiction there is no power to adjudicate the lien of a claimant. See, also, In re Patterson Lumber Company (D. C.) 247 F. 578, inferentially, In re Schulte-United (C. C. A.) 59 F.(2d) 553.

It may be acknowledged that there would be no difference of opinion between the Circuit Courts of Appeal if the cases being considered by each had been identical. Authorities are, however, on both sides of the question, and since we should not lose sight of the vast remedial purpose of the bankruptcy act with its various requirements for the distribution of dividends within stated periods, and the salutory duty of conserving, with one wholesome policy, assets for creditors, it would seem to be the appropriate course, in the absence of some great wrong to a foreign claimant, to require all claimants who do not dispute the ownership of the bankrupt, but merely claim a lien on such property, to go where the estate is being administered.

An order will be settled dismissing the interventions and directing the local receiver to turn over all property to the trustee. Such order containing appropriate recitals as to property identity and description in order that the rights of intervenors here may be protected.